Our next case for this morning is Beard v. Wexford Health Sources. All right, Mr. Plura. May it please the court, counsel. My name is Tom Plura. I represent Mr. Beard, the appellant. Under the Constitution, nobody has a right to perfect health care. This court and their families don't have a right to receive perfect health care. And an incarcerated prisoner has no such right. On the other hand, refusing to provide an inmate's constitutional rights. Now, be sure that simply denying an inmate a Tylenol when he wants it doesn't mean that you're guilty of deliberate indifference. But luckily in this case, we're not dealing with any of that. Because the jury heard testimony a day and a half, and the jury decided that Mr. Beard's constitutional rights had been denied. Eight different health care providers had referred him out for services, and Wexford, the only defendant in the case, had denied his outside referral. I'm here very briefly because I think it's important now is the time for this court to clarify and unequivocally rule that Village of Forest Park versus Iskander is no longer applicable. Counsel, why does the answer to that issue matter? Since you persuaded the jury and the district judge that Wexford is directly liable, why would it matter whether it could be vicariously liable as well? Well, I think that our argument is, is had we been allowed to present that issue to the jury, it is certainly conceivable that we would have gotten a higher verdict. Why? Because I would have been able to prove that there... What elements of damages were you prohibited from proving in a direct liability theory? The elements of damages were just to show, as one example was, that he had been denied this, and subsequently he did go for surgery, but because his surgery had not occurred at that time, we had argued in front of the court and were successful on the equitable claim that injunctive relief was necessary, that he needed to have his surgery. We were never able to put that in front of the jury. So, for example, we didn't have a surgeon testify that, well, this guy now has some significant problems that we and that results in his damages. But I mean, I shared Judge Easterbrook's concern, but let me jump, since we're talking about the verdict, to what strikes me as the central question. The jury, this jury, comes up with $10,000 actual damages, and after considering the various in this particular case, is the correct ratio for punitive damages. So instead of the jury's $500,000 award for punitives, he orders $50,000. So you've been given the opportunity for a new trial on punitive damages, but clearly if there's a constitutional cap in terms of the ratio, it would be an absurd action, it seems to me, for you to take that new trial. I mean, why risk getting anything less than $50,000, and if $50,000 is the cap, there you are. So I'm trying to figure out, first of all, have you argued anything about whether, along the lines that you were just saying to us, have you argued anything about whether the $10,000 was wrong, whether the jury, what worries me for the new trial with these ratios is that they're allowed to change only one of the two numbers in a ratio, maybe you aren't giving a fair new trial. So on a new trial, should the jury be free, even if 5 to 1 is the correct ratio, to re-examine whether $10,000 is the correct measure of his damages, and then turning it around the other way, have you argued, and I wasn't clear that I saw this, that the Supreme Court's cases, whether State Farm or other cases, are not so rigid as to say 5 to 1, so maybe on a new trial you'd be free to argue 10 to 1, you'd be free to argue 7 to 1, you'd be free to argue something. I mean, those are the kinds of arguments that I guess I would have been looking for. Sure, we did make the arguments that it's not a chipped and stoned 4 to 1 or 5 to 1, and we cite in our briefs multiple cases, like the Mathias case, the famous bedbugs case. The Supreme Court did that work for you in State Farm, insofar as they said they have refrained from imposing a bright line ratio. Right, it seemed like the District Court got caught up on, well, this isn't a remitter, this is just a constitutionally required reduction in an award that the Court found to be unconstitutional, because it was $10,000 compensatory and $500,000. I think the argument, though, on the new trial, and why was it only $10,000, I think we tried to streamline the trial very quickly, it was a day and a half trial, but one of the issues is the inmate had not actually gone for his surgery yet. Now he has. Now after the Court granted our injunctive relief and the patient's had surgery, he did incur damages, and we think at a new trial he would be able to prove that the $10,000 was, he suffered much more than $10,000. So was it a problem that you didn't get enough discovery? I mean, I can see that once you've had the operation, this is new evidence, but... It wasn't the discovery. I'm just trying to get a handle on this interesting set of situations where the trial judge reduces an award. Sometimes the trial judge will reduce an award because there's a statutory cap. Sometimes a trial judge, as this judge did, will reduce an award of punitive damages because the Supreme Court has had a certain amount to say about due process and punitive damages. And in that sense, the judge was persuaded that the ordinary rules for remittiture don't apply. This wasn't an evidentiary, at least what the judge said, is this was not an evidentiary-based reduction. That's correct. Although the judge actually also says the reason he thought 5-1 was the right amount was based in the evidence. It was confusing to me there was contradictory evidence because he said, no, this is a constitutional maximum, not based on anything in the evidence. That's what I saw in the opinion. Was there any non-constitutional argument about punitive damages in the district court? It seems very strange for a federal court to start with a constitutional question rather than asking what the maximum recovery under 1983 itself is. Was that issue raised in the district court? I think the court, I'd just be blunt, I believe that the court is worried about what- The answer to my question is either yes or no. Then you can tell me why you think I asked it. No. I do know why I asked it. No. No. All right. Doesn't that strike you as odd? Not at all. In which the Supreme Court says, do not start with constitutional questions. Start with statutory questions. The Supreme Court held in the Exxon Valdez case, Exxon shipping against Baker, that the maximum ratio of punitive damages in admiralty law is one to one as a matter of federal law. And I wonder whether that isn't equally true about 1983. All these constitutional cases deal with state law awards. And states as a matter of their domestic law can have what law they want subject to federal constitutional constraints. But 1983 is a federal rule. We have to figure out what it means. My answer was no, I don't think so. I don't believe so. And in my opinion, trying to get inside the judge's head is- I'm not asking anything about the judge's head. I'm asking about whether the parties made any non-constitutional argument about the amount of punitive damages. You have treated this on appeal, both sides, as if this were an award under state law where federal law was setting a cap. But it's not an proper award as a matter of federal law is. Right. Well, we argued that it should be a punishment. We argued that because of the prisoner being a captive audience that he can't go anywhere else. You're essentially- I mean, to embellish your argument, the parties assumed- I'm looking at one part of the judge's decision, the district court judge's decision. The parties assumed that the same criteria that are used in these state cases match reasonably well a body of law that borrows quite a bit anyway from state tort law, 1983. And I just wanted to go back to page 13 of one of the district judge's opinions. He's looking at the reprehensibility of Wexford's conduct, the actual harm suffered by plaintiffs, and the need for deterrence and punishment. So at least reprehensibility and actual harm sound to me like facts. Like I'm looking at this record, and this is what you did here, and maybe in another record. It's not that they hate Wexford or anything. It's just that something happened here. So I guess I am thinking about the whole notion about whether one can handle this as though it's in a fact-free zone. It doesn't seem to be. I don't think it was fact-free, but we're stuck with what the judge said, that it wasn't based on any- But your Seventh Amendment argument is affected by whether it's facts or not. That's correct. It seems like the judge went and looked at whether or not it was then the inmate has a Seventh Amendment right to a new trial on not only punitive damages, but compensatory damages as well. Okay. We'll rest on our other portions of the brief that were filed. Thank you. Thank you so much. You'll have your rebuttal. Mr. Unrath. Thank you, Your Honor. Good morning. My name is Craig Unrath. I represent the defendant, Epelee. The Supreme Court has set a presumption that few awards exceeding a single-digit ratio between punitive and compensatory damages will satisfy due process. Counsel, Mr. Unrath, you're starting with the Constitution, as your adversary did, and I am interested in whether that is appropriate. The Supreme Court says that constitutional issues are reached only after nonconstitutional grounds of decision have been resolved. So what is the maximum award as a matter of statutory law under 1983? I've mentioned the Exxon case, which held that double damages are the maximum in admiralty. Why isn't that the maximum under 1983? Or maybe it should be treble that the jury can do anything it pleases, subject only to the Constitution. Because the Illinois, I'm sorry, the United States Supreme Court has been, in the Campbell case, expressed its concern about the arbitrariness of punitive damage awards. Where did the Supreme Court say that in 1983 cases, any amount of punitive damages greater than the amount of compensatory damages is appropriate? All the cases the parties are citing arose under state tort law, except of course Exxon Valdez, which the parties didn't cite. That's the only decision under federal tort law of which I'm aware, in which the Supreme Court asks the question, as a matter of federal law, what is the maximum permissible amount of punitive damages under federal law? Yes, I've just made you aware of one. You were not aware of the Exxon case previously, but in fact, that's what the Supreme Court has held. And it has never held any other number under any other font of federal law. That's just the world we live in at the moment. And just to supplement that, what they said in the Exxon Valdez case, is this happens to be one of those rare areas in which federal common law governs. So we get to be a common law court this time. We're having fun. Let's decide what the ratio is. And it was very consciously wearing that hat as a common law court that they came up with the rule that there had to be a one to one ratio, so you can call it two times damages if you want, for punitives. What we would need to look at, to follow up on what Judge Easterbrook is talking about, is the other ways in which section 1983 and 1988 have been understood. Now we do know that the Supreme Court says for statutes of limitations, for example, we borrow from state law for 1983 cases. So you know well, I'm sure, you know, in Illinois it's going to be two years, in Wisconsin it's going to be six years, and other of another question. Do you think the Supreme Court would borrow here from state law, which would take you back into the line of cases that you're talking about? Or do you think it would be more inclined to follow this, hey, you know, we can be common law here too, let's just make up a rule? I'm not, again, I'm not aware of any case under federal law outside of Admiralty where there's been a cap on punitive damages under, for a 1983 judgment. A judgment under 1983. Non-statutory cap, in other words, yes. That's correct. However, the Supreme Court's rulings have stated that one of the three criteria for establishing the cap on punitive damages is the difference between the punitive damages awarded by the jury and civil penalties authorized or imposed in comparable cases. And that's precisely what the district court did in this case. Well he gave a big list of cases, but it seems to me you could create an equally long list of cases where ratios up to, you know, 8, 9, or 10 to 1 were used. I don't know that 100 to 1 is what we would have seen. In this case it was 50 to 1. The court found that excessive. There's been some question here as to whether this is... But why wouldn't, why wouldn't have $75,000 worked? I mean, Again, this is something that's within the court's discretion. Well, that's where I want to get back to my Seventh Amendment point. To the extent this is just a pure question of law, I'm willing to buy the proposition that that doesn't implicate the Seventh Amendment. But to the extent we're talking about something that depends on the jury's evaluation of the facts in front of it, how reprehensible was the conduct, how serious was the harm, then that starts to sound like findings of fact by a jury and the kind of thing that the remediator process ought to work for. And I'm especially worried if we're in this world of ratios, of fiddling with only one side of the ratio. And it's a risk, by the way, for Mr. Beard. For all I know, a new jury would decide that his actual damages weren't $10,000. After all, they were just $7,000, which would then create a whole cascade of consequences that he didn't like. Maybe a new jury would think it was $15,000. Maybe it would think it was $10,000 on the button again. I don't know. But a full new trial is not risk-free for any plaintiff. Absolutely, Your Honor. I think the question we're dealing with here is, at what point do we depart from the suggested single-digit ratio? And I'm just saying there are a lot of single digits left over after five. There are. Six, seven, eight. There are. Could be seven, could be eight. We can give you four. Four of them, specifically. But 50 is not in there. It's not on the list. And it may not be in there. But that's why I'm worried about, even if there were a new trial, scenario number one new trial, five-to-one ratio is etched in stone, and no sane plaintiff would do that. Scenario number two new trial is, hey, this may be a case, after you've looked at it, where one of the other available single digits is the correct ratio, depending on the facts that trial. Maybe nine-to-one. So it matters, actually, quite a bit, what we think of this ratio. The district court made a finding of law that, based on comparable cases, alleging similar... It found facts. It said, based on Wexford's reprehensibility. And comparable cases. And the harm. Then it listed a bunch of cases. That's what I'm telling you. I could have given you a page of cases with bigger awards than the ones he chose. I mean, I'm not the district judge. I'm just saying that citing a bunch of cases is a risky way to go about this. Well, it's something that's called for by the... The Supreme Court required him to list these cases. But he didn't have the... On the other hand, there was the Bedbug case, or... He could have listed cases with much bigger punitive damages awards. Absolutely. And he addressed the Mathias case, which is a perfect example of a case where a departure from the single-digit ratio was, to my mind, perfectly reasonable. As a matter of fact, absolutely reasonable. 37 to 1 for that case, I believe, was the ratio. And one of the key factors in the Mathias case is that the plaintiffs completely eliminated any possibility of an innocent explanation. And that was the key factor that the district court found was a reason to depart from the in that case. That 37 to 1 ratio did not violate due process because the behavior was not only completely reprehensible, but there was absolutely no evidence that they could put up to support their conduct. And in this case... But that's what the jury clearly thought here, too. Any jury that's going to render a $500,000 punitive award is sending a pretty strong signal. It's a strong signal. That it thinks that Wexford's behavior was completely unacceptable. Now, I understand one poor prisoner's Achilles tendon tear may not be the same level of grossness as thinking that you went to a hotel with a lot of bedbugs. But for him, it was a serious issue. I'm not going to re-argue the facts of the case. I believe that the juries... We are not contesting the ruling that there was sufficient evidence for a finding of deliberate indifference and a finding of punitive damages. However, when you look at the district court noted that there was evidence supporting the defendant's case. And I'd like to point out just one, just one fact. Two years after his initial complaint of pain, he went to an outside podiatrist, not a prison podiatrist, outside conservative measures. And the plaintiff's attorney said, I agree with that treatment choice. Now, the MRI that revealed the tear in his Achilles tendon, that didn't come from an outside referral. The prison doctors made that referral. That's how they discovered it. The collegial reviews turned down his request for a surgical referral because they said that the surgical procedure doesn't always work. Plaintiff's expert agreed with that. Moreover, the plaintiff's expert stated, he said, in my opinion, his prognosis following surgery would be good. However, in his deposition, he said, I really have no idea what his prognosis would be. Now, those are just a small sampling of facts here, but they indicate that there is some, unlike Mathias, there is some evidence suggesting that this may have been just mere negligence, that perhaps the jury... You are re-arguing the evidence. I'm telling you, the jury didn't see it that way. Oh, I understand. And it's a jury verdict. So whatever we're to think of the case, without accepting their number, they have told us unambiguously that they don't think that the care was anything but deliberately indifferent. And getting back to Justice Easterbrook's question, is there any cap on that? We are judges. Pardon me. The cap, what if they'd awarded 5 million or 50 million? Yeah, no, I mean, of course it was going to go down, but I'm just saying they're trying to say something to you. That's all I'm reading from that number. I'm not saying that other than that. And I would respond that a $50,000 award of punitive damages sends a very strong message in and of itself, particularly when you take into account the attorney's fees. Well, I was going to say, the attorney's fees exceed that. $50,000 is really not that much money for litigation. Big company like Wexford. Well, again, Your Honor, there's been a number of cases that suggested that the court should not take into account the status of the company. There should not be a thumb on the scale of justice against large corporations. It's not a thumb on the scale of justice. We're talking about deterrence. And if I fine you $6 for doing something, you might think, okay, fine, I'll pay $6. If I fine you $600,000, it would probably get your attention much more. $50,000 caught my client's attention. So did the cost of this multi-year litigation. The critical factor in all awards of punitive damage is the reprehensibility of the conduct. And in this case, plaintiff's own retained expert gave a clean bill of health for the first couple of years of treatment, conservative treatment. Your Honor, I find that the judge made a reasonable decision. He looked at comparable cases, which he's required to do, and he also looked at the fact that unlike the Mathias case, there was some evidence suggesting that the medical decisions were not entirely wrong. Now, the jury has spoken on that. We're not contesting the jury's verdict. You are trying to use this as a, yeah, it's just not a fact I'm sure has relevance. I realize the district judge said that, but it may be that he was talking about something that's not a relevant factor. I consider it highly relevant, just as I consider it highly relevant in Mathias, that the plaintiff completely eliminated any possibility of exculpatory conduct here, there was no explanation for what they did. Here, at least we had something. I'm not saying it was enough to prevent a verdict against us, but there was something. Are there no further questions? Thank you. Okay, thank you. Mr. Plura. I think the court understands the questions and the case. If you have any questions, I'm happy to answer. Otherwise, I'll rest. Thank you. All right, thank you very much. Thanks to both counsel. We'll take the case under advisement.